U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

NOV 1 6 2017

CLERK, U.S. DISTRICT COURT
By_____
                    Deputy

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| IN RE: DEPUY ORTHOPAEDICS, INC. PINNACLE HIP IMPLANT PRODUCTS LIABILITY LITIGATION | MDL Docket No.<br><br>3:11-MD-2244-K |
| This Order Relates to:<br>  *Alicea* – 3:15-cv-03489-K<br>  *Barzel* – 3:16-cv-01245-K<br>  *Kirschner* – 3:16-cv-01526-K<br>  *Miura* – 3:13-cv-04119-K<br>  *Stevens* – 3:14-cv-01776-K<br>  *Stevens* – 3:14-cv-02341-K | |

## COURT'S CHARGE TO THE JURY

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case. As the jury you will decide the disputed questions of fact.

As the Judge, I will decide all questions of law and procedure. From time to time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

Soon the lawyers for each of the parties will make what is called an opening statement. Opening statements are intended to assist you in understanding the evidence. What the lawyers say is not evidence. After the opening statements, the plaintiff will call witnesses and present evidence. Then, the defendant will have an

opportunity to call witnesses and present evidence. After each party's main case is completed, the opposing party will be permitted to present rebuttal evidence. After all the evidence is completed, the lawyers will again address you to make final arguments. Then I will instruct you on the applicable law. You will then retire to deliberate on a verdict.

Keep an open mind during the trial. Do not decide any fact until you have heard all of the evidence, the closing arguments, and my instructions.

Pay close attention to the testimony and evidence. If you would like to take notes during the trial, you may do so. If you do take notes, be careful not to get so involved in note taking that you become distracted and miss part of the testimony. Your notes are to be used only as aids to your memory, and if your memory should later be different from your notes, you should rely on your memory and not on your notes. If you do not take notes, rely on your own independent memory of the testimony. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than the recollection of each juror concerning the testimony. Even though the court reporter is making stenographic notes of everything that is said, a typewritten copy of the testimony will not be available for your use during deliberations. However, if you have a specific disagreement as to a particular witness's testimony on a specific subject, we can attempt to obtain that information for you. On the other hand, any exhibits admitted during the trial will be available to you during your deliberations.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence.  Do not discuss the case even with the other jurors until all of the jurors are in the jury room actually deliberating at the end of the case.  I know that many of you use cell phones, iPhones, Blackberries, the internet and other tools of technology. You also must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case. This includes your family and friends. You may not communicate with anyone about the case on your cell phone, through e-mail, Blackberry, iPhone, text messaging, or on Snapchat or Twitter, through any blog or website, through any internet chat room, or by way of any other social networking websites or applications, including Facebook, Instagram, LinkedIn, and YouTube.  If anyone should attempt to discuss this case or to approach you concerning the case, you should inform the court immediately.  Hold yourself completely apart from the people involved in the case—the parties, the witnesses, the attorneys, and persons associated with them.  It is important not only that you be fair and impartial but that you also appear to be fair and impartial.

Do not make any independent investigation of any fact or matter in this case. You are to be guided solely by what you see and hear in this trial.  Do not learn anything about the case from any other source.

During the trial, it may be necessary for me to confer with the lawyers out of your hearing or to conduct a part of the trial out of your presence.  I will handle these

matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of the trial.

The evidence in this case will consist of the following:

1. The sworn testimony of all witnesses, no matter who called a witness.

2. All exhibits received in evidence, regardless of who may have produced the exhibits.

3. All facts that may have been stipulated or judicially noticed that you must take as true for purposes of this case.

A "stipulation" is an agreement between both sides that certain facts are true. When the lawyers on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence and regard that fact as proved.

I may take "judicial notice" of certain facts or events. When I declare that I will take judicial notice of some fact or event, you must accept that fact as true. If I sustain an objection to any evidence or if I order evidence stricken, that evidence must be entirely ignored.

During the trial, the lawyers may make objections to questions asked or answers given. That simply means that the lawyer is requesting that I make a decision on a particular rule of law. Do not draw any conclusion from such objections or from my rulings on the objections. These relate only to the legal questions that I must determine and should not influence your thinking. If I sustain an objection to a question, the

witness cannot answer it.  Do not attempt to guess what answer might have been given had I allowed the question to be answered.  If I overrule an objection, treat the answer like any other.  Additionally, some evidence may be admitted for a limited purpose only.  When I instruct you that an item of evidence has been admitted for a limited purpose only, you must consider it only for that limited purpose and for no other purpose.

You are to consider only the evidence in the case.  From the facts that you believe have been proved, you may draw such reasonable inferences or conclusions as you feel are justified in light of your experience.

It is now time for opening statements.

## POST-EVIDENCE INSTRUCTIONS

Now that you have heard all the evidence in this case, I will instruct you on the law that you must apply.

## GENERAL INSTRUCTIONS

It is your duty to follow the law as I give it to you in this Charge. On the other hand, you the jury are the judges of the facts. Do not consider any statements that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Remember that any statements or arguments made by the lawyers are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Your answers and your verdict must be unanimous. Unless you are instructed otherwise, each plaintiff must prove each essential part of his or her claims by a preponderance of the evidence. This means the greater weight and degree of credible evidence before you. In other words, to establish a claim or defense by a "preponderance of the evidence" means to prove that the claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

6

If the proof fails to establish any essential part of a plaintiff's claim by a preponderance of the evidence, you should find for the defendant as to that claim. The fact of an injury, alone, is not sufficient to prove any plaintiff's claims, including the presence of a defect, an inadequate warning, or causation.

You are the sole judges of the "credibility" or believability of each witness and the weight to be given to the witness's testimony. In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or an innocent lapse of memory; the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

The weight of the evidence is not necessarily determined by the number of witnesses testifying as to the existence or nonexistence of any fact. The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses

may have testified to the contrary, if after considering all the other evidence you believe that single witness.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—he or she is called an expert witness—is permitted to state his or her opinions on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from the evidence that he or she testifies regularly as an expert witness and whether his or her income from such testimony represents a significant portion of his or her income.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

There are two types of evidence you may consider in properly finding the truth as to the facts in the case. One is direct evidence. A fact is established by direct evidence when proved by witnesses who saw the act done or heard the words spoken or by documentary evidence. The other is indirect or circumstantial evidence—the

proof of a chain of circumstances indicating the existence or nonexistence of certain other facts. Direct proof of a state of mind is almost never available and is not required. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

In reaching your verdict you are not to be affected by sympathy for any of the parties, what the reaction of the parties or of the public to your verdict may be, whether it will please or displease anyone, be popular or unpopular or, indeed, any consideration outside the case as it has been presented to you in this courtroom. You should consider only the evidence – both the testimony and the exhibits – find the facts from what you consider to be the believable evidence, and apply the law as I now give it to you. Your verdict will be determined by the conclusion you reach, no matter whom the verdict helps or hurts.

There are six separate cases, involving ten plaintiffs and two defendants. You must give separate consideration to each claim and each party in each case. Although there are ten plaintiffs, it does not follow that if one is successful as to a particular claim, the others should prevail on that claim, too. You must decide each plaintiff's case solely on the evidence that applies to that plaintiff.

A medical device manufacturer, like DePuy Orthopaedics, Inc., owes a duty to adequately warn a patient's orthopedic surgeon about a device's risks. The manufacturer does not owe a duty to warn patients directly.

9

The plaintiffs' implanting surgeons and surgery dates were as follows:

- Ramon Alicea was implanted with a Pinnacle Ultamet by Dr. Jonathan Mallen on June 22, 2010.

- Uriel Barzel was implanted with Pinnacle Ultamets by Dr. David Shein on June 22, 2007.

- Karen Kirschner was implanted with a Pinnacle Ultamet by Dr. Bradley Gerber on December 2, 2009.

- Hazel Miura was implanted with a Pinnacle Ultamet by Dr. David Shein on May 2, 2008.

- Eugene Stevens was implanted with a Pinnacle Ultamet by Dr. David Shein on May 16, 2009.

- Michael Stevens was implanted with a Pinnacle Ultamet by Dr. Peter Terhaar on October 19, 2011.

## Question 1: Strict Liability (Design Defect)

**Was the Pinnacle Ultamet not reasonably safe in that it was defectively designed and, if so, was such design defect a substantial factor in causing harm to the persons listed below?**

Plaintiffs claim that they were harmed by the Pinnacle Ultamet and that the Pinnacle Ultamet was not reasonably safe because of its defective design, specifically its metal-on-metal articulation. DePuy Orthopaedics, Inc. denies that the Pinnacle Ultamet was defectively designed. J&J denies that it designed the Pinnacle Ultamet and claims that it therefore cannot be held liable for any defect in design.

To establish this claim, Plaintiffs must prove all of the following:

> (1) Defendants manufactured, sold, distributed, or were within the chain of distribution of the Pinnacle Ultamet, or were otherwise responsible for placing the Pinnacle Ultamet into the stream of commerce;

> (2) at the time it left Defendants' hands, the Pinnacle Ultamet was not reasonably safe when used for its intended or reasonably foreseeable purpose because of its defective design; and

> (3) the Pinnacle Ultamet's defective design was a substantial factor in causing Plaintiffs' harm.

A product is defective if it is not reasonably safe—that is, if the product is so likely to be harmful to persons that a reasonable person who had actual knowledge of its potential for producing injury would conclude that it should not have been marketed in that condition.

A product is defectively designed if a reasonable person who knew or should have known of the product's potential for causing injury and of the feasible alternative designs would have concluded that the product should not have been marketed in that condition. Whether the product should have been marketed in that condition depends upon a balancing of the risks involved in using the product against (1) the product's usefulness and its costs, and (2) the risks, usefulness and costs of the alternative designs as compared to the product the defendant did market.

It is not necessary to find that Defendants knew of the Pinnacle Ultamet's potential for causing injury in order for you to decide that it was defectively designed. It is sufficient that a reasonable person who did in fact know of the Pinnacle Ultamet's

11

potential for causing injury would have concluded that it should not have been marketed in that condition.

An act or omission is regarded as a cause of an injury if it was a substantial factor in bringing about the injury, that is, if it had such an effect in producing the injury that reasonable people would regard it as a cause of the injury. There may be more than one cause of an injury, but to be substantial, it cannot be slight or trivial. You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it. Where the independent and negligent acts or omissions of two or more parties cause injury to another, each of those negligent acts or omissions is regarded as a cause of that injury provided that it was a substantial factor in bringing about that injury.

Answer "Yes" or "No" with respect to each of the following:

| | DePuy Orthopaedics, Inc. | Johnson & Johnson |
|---|---|---|
| Ramon Alicea | Yes | Yes |
| Uriel Barzel | Yes | Yes |
| Karen Kirschner | Yes | Yes |
| Hazel Miura | Yes | Yes |
| Eugene Stevens, Jr. | Yes | Yes |
| Michael A. Stevens | Yes | Yes |

## Question 2: Negligent Design

**Were Defendants negligent in designing the Pinnacle Ultamet and, if so, was such negligence a substantial factor in causing harm to the persons listed below?**

Plaintiffs claim that they were harmed by Defendants' negligence in designing the Pinnacle Ultamet and that they should be held responsible for that harm. Specifically, Plaintiffs claim that the Pinnacle Ultamet was negligently designed because of its metal-on-metal articulation. DePuy Orthopaedics, Inc. denies that the Pinnacle Ultamet was negligently designed. J&J denies that it designed the Pinnacle Ultamet and claims that it therefore cannot be held liable for any negligence in design.

To establish this claim, Plaintiffs must prove all of the following:

> (1) Defendants manufactured, sold, distributed, or were within the chain of distribution of the Pinnacle Ultamet, or were otherwise responsible for placing the Pinnacle Ultamet into the stream of commerce, or were substantially involved in the Pinnacle Ultamet's design;

> (2) Defendants were negligent in designing the Pinnacle Ultamet; and

> (3) Defendants' negligence was a substantial factor in causing Plaintiffs' harm.

Negligence is lack of ordinary care. It is a failure to use that degree of care that a reasonably prudent person would have used under the same circumstances.

Negligence may arise from doing an act that a reasonably prudent person would not have done under the same circumstances, or, on the other hand, from failing to do an act that a reasonably prudent person would have done under the same circumstances.

Negligence requires both a reasonably foreseeable danger of injury to another and conduct that is unreasonable in proportion to that danger. A person is only responsible for the results of his or her conduct if the risk of injury is reasonably foreseeable. The exact occurrence or exact injury does not have to be foreseeable; but injury as a result of negligent conduct must be not merely possible, but probable.

There is negligence if a reasonably prudent person could foresee injury as a result of his or her conduct, and acted unreasonably in the light of what could be foreseen. On the other hand, there is no negligence if a reasonably prudent person could not have foreseen any injury as a result of his or her conduct, or acted reasonably in the light of what could have been foreseen.

A product is negligently designed and marketed if a reasonable person who knew or should have known of the product's potential for causing injury and of any feasible alternative design(s) would have concluded that the product should not have been marketed in that condition. Whether the product should have been marketed in that condition depends upon a balancing of the risks involved in using the product against (1) the product's usefulness and its costs, and (2) the risks, usefulness and costs of any feasible alternative design as compared to the product that was marketed. Defendants may be held liable for negligently designing and marketing the Pinnacle Ultamet if they knew of the Pinnacle Ultamet's potential for causing injury or, in the exercise of reasonable care, should have known of the Pinnacle Ultamet's potential for causing injury and if a reasonable person would have concluded that the Pinnacle Ultamet should not have been marketed in that condition.

You have heard evidence of the general customs and practices of others who are in the same business or trade as that of Defendants. This evidence is to be considered by you in determining whether the conduct of Defendants was reasonable under the circumstances. Defendants' conduct is not to be considered unreasonable simply because someone else may have used a better or safer practice. On the other hand, a general custom, use, or practice by those in the same business or trade may be considered some evidence of what constitutes reasonable conduct in that trade or business. You must first decide, from the evidence presented in this case, whether there is a general custom or practice in Defendants' trade or business. If you find that there is a custom or practice, you may take that general custom or practice into account in considering the care used by Defendants in this case. However, a general custom or practice is not the only test; what you must decide is whether, taking all the facts and circumstances into account, Defendants acted with reasonable care.

An act or omission is regarded as a cause of an injury if it was a substantial factor in bringing about the injury, that is, if it had such an effect in producing the injury that reasonable people would regard it as a cause of the injury. There may be more than one cause of an injury, but to be substantial, it cannot be slight or trivial. You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it. Where the independent and negligent acts or omissions of two or more parties cause injury to another, each of those negligent acts or omissions is regarded as a cause of that injury provided that it was a substantial factor in bringing about that injury.

Answer "Yes" or "No" with respect to each of the following:

|  | DePuy Orthopaedics, Inc. | Johnson & Johnson |
|---|---|---|
| Ramon Alicea | Yes | Yes |
| Uriel Barzel | Yes | Yes |
| Karen Kirschner | Yes | Yes |
| Hazel Miura | Yes | Yes |
| Eugene Stevens, Jr. | Yes | Yes |
| Michael A. Stevens | Yes | Yes |

## Question 3: Strict Liability (Inadequate Warning)

**Was the Pinnacle Ultamet not reasonably safe in that it was marketed with no or inadequate warnings and if so, was such failure to warn or inadequate warning a substantial factor in causing harm to the persons listed below?**

Plaintiffs claim that they were harmed by the Pinnacle Ultamet and that the Pinnacle Ultamet was not reasonably safe because it was marketed without sufficient warnings regarding the device's potential risks.   DePuy Orthopaedics, Inc. denies that the product warnings were inadequate.   J&J denies that it manufactured or marketed the Pinnacle Ultamet and contends that it therefore cannot be held liable for any failure to warn.

To establish this claim, Plaintiffs must prove all of the following:

> (1) Defendants manufactured, sold, distributed, or were within the chain of distribution of the Pinnacle Ultamet, or were otherwise responsible for placing the Pinnacle Ultamet into the stream of commerce;
>
> (2) the Pinnacle Ultamet was not reasonably safe when used for its intended or reasonably foreseeable purpose because it was marketed without sufficient warnings regarding its potential risks; and
>
> (3) the lack of sufficient warnings was a substantial factor in causing Plaintiffs' harm.

A product is defective if it is not reasonably safe—that is, if the product is so likely to be harmful to persons that a reasonable person who had actual knowledge of its potential for producing injury would conclude that it should not have been marketed in that condition.

A product may be defective as a result of inadequate warnings or instructions.

If a product is reasonably certain to be harmful if used in a reasonably foreseeable way, the manufacturer of that product owes a duty to use reasonable care to give adequate warning of any danger known to it, or which in the use of reasonable care it should have known, and which the user of the product—here, the Plaintiffs' implanting physicians—ordinarily would not discover. Reasonable care means that degree of care which a reasonably prudent person would use under the same circumstances.

Because the Pinnacle Ultamet is a medical device, Defendants owed a duty to warn Plaintiffs' implanting physicians of all potential dangers associated with the device that

16

it knew, or, in the exercise of reasonable care, should have known to exist. The warning must have provided sufficient information to that category of prescribing physicians who may be expected to have the least knowledge and experience with the device.

A warning is inadequate if Defendants failed to warn of a particular danger associated with the Pinnacle Ultamet, or if the warnings they gave were insufficient. When determining the adequacy of a warning, you should consider the location and conspicuousness of the warning and the method in which the warning is communicated to the orthopedic surgeon. The language of the warning must be direct, unequivocal, and sufficiently forceful to convey the risks. The warning must be considered as a whole and evaluated in the light of its meaning to a reasonably prudent orthopedic surgeon.

Manufacturers of products are obligated to keep informed of scientific and technical discoveries in their particular field.

Even if the Pinnacle Ultamet was reasonably safe when manufactured and sold, and involved no known risks at that time for which a warning needed to be given, Defendants continued to owe a duty to warn of dangers in the use of the device which came to their attention after manufacture or sale. Defendants were required to keep informed of knowledge related to the device as gained through research, adverse reaction reports, scientific literature, and other available methods. Defendants were also required to take such steps as were reasonably necessary to bring that knowledge to the attention of the medical community. The greater the potential hazard of the device, the more extensive the Defendants' efforts should have been to make that hazard known to the medical community.

An act or omission is regarded as a cause of an injury if it was a substantial factor in bringing about the injury, that is, if it had such an effect in producing the injury that reasonable people would regard it as a cause of the injury. There may be more than one cause of an injury, but to be substantial, it cannot be slight or trivial. You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it. Where the independent and negligent acts or omissions of two or more parties cause injury to another, each of those negligent acts or omissions is regarded as a cause of that injury provided that it was a substantial factor in bringing about that injury.

If the particular plaintiff's implanting surgeon was aware of the possible risks involved in the use of the Pinnacle Ultamet but decided to use it anyway, any insufficient warning was not a substantial factor in causing that plaintiff's injury. Moreover, even if the particular plaintiff's implanting surgeon was not aware of a risk, that plaintiff must show that a different warning would have changed his or her surgeon's decision to use the Pinnacle Ultamet. Otherwise, any failure to warn was not a substantial factor in causing the plaintiff's harm.

Answer "Yes" or "No" with respect to each of the following:

|  | DePuy Orthopaedics, Inc. | Johnson & Johnson |
|---|---|---|
| Ramon Alicea | Yes | Yes |
| Uriel Barzel | Yes | Yes |
| Karen Kirschner | Yes | Yes |
| Hazel Miura | Yes | Yes |
| Eugene Stevens, Jr. | Yes | Yes |
| Michael A. Stevens | Yes | Yes |

18

## Question 4: Strict Liability (Manufacturing Defect)

**Was the Pinnacle Ultamet not reasonably safe in that it was defectively manufactured and, if so, was such manufacturing defect a substantial factor in causing harm to the persons listed below?**

Plaintiffs claim that they were harmed by the Pinnacle Ultamet and that the Pinnacle Ultamet was not reasonably safe because it was defectively manufactured and did not comply with Defendants' specifications. DePuy Orthopaedics, Inc. denies that the Pinnacle Ultamet implanted in each plaintiff was defectively manufactured. J&J denies that it was a manufacturer or seller of the Pinnacle Ultamet and contends that it therefore cannot be held liable for any defect in manufacture.

To establish this claim, Plaintiffs must prove all of the following:

> (1) Defendants manufactured, sold, distributed, or were within the chain of distribution of the Pinnacle Ultamet, or were otherwise responsible for placing the Pinnacle Ultamet into the stream of commerce;

> (2) at the time it left Defendants' hands, the Pinnacle Ultamet was not reasonably safe when used for its intended or reasonably foreseeable purpose because of a manufacturing flaw; and

> (3) the Pinnacle Ultamet's manufacturing flaw was a substantial factor in causing Plaintiffs' harm.

A product is defective if it is not reasonably safe—that is, if the product is so likely to be harmful to persons that a reasonable person who had actual knowledge of its potential for producing injury would conclude that it should not have been marketed in that condition.

A manufacturing defect exists if a particular Pinnacle Ultamet was not built to specifications or did not conform to the manufacturer's intended design.

It is not necessary to find that Defendants knew or should have known of the Pinnacle Ultamet's potential for causing injury in order for you to determine it was not reasonably safe. It is sufficient that a reasonable person who did in fact know of the product's potential for causing injury would have concluded that the product should not have been marketed in that condition.

An act or omission is regarded as a cause of an injury if it was a substantial factor in bringing about the injury, that is, if it had such an effect in producing the injury that

19

reasonable people would regard it as a cause of the injury. There may be more than one cause of an injury, but to be substantial, it cannot be slight or trivial. You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it. Where the independent and negligent acts or omissions of two or more parties cause injury to another, each of those negligent acts or omissions is regarded as a cause of that injury provided that it was a substantial factor in bringing about that injury.

Answer "Yes" or "No" with respect to each of the following:

| | DePuy Orthopaedics, Inc. | Johnson & Johnson |
|---|---|---|
| Ramon Alicea | Yes | Yes |
| Uriel Barzel | Yes | Yes |
| Karen Kirschner | Yes | Yes |
| Hazel Miura | Yes | Yes |
| Eugene Stevens, Jr. | Yes | Yes |
| Michael A. Stevens | Yes | Yes |

## Question 5: Negligent Manufacture

**Were Defendants negligent in manufacturing the Pinnacle Ultamet and, if so, was such negligence a substantial factor in causing harm to the persons listed below?**

Plaintiffs claim that they were harmed by Defendants' negligence in manufacturing the Pinnacle Ultamet and that they should be held responsible for that harm. Specifically, Plaintiffs claim that their particular Pinnacle Ultamet implants were negligently manufactured because they did not comply with Defendants' specifications. DePuy Orthopaedics, Inc. denies that the Pinnacle Device implanted in any plaintiff was negligently manufactured. J&J denies that it was a manufacturer or seller of the Pinnacle Device and contends that it therefore cannot be held liable for negligent manufacture.

To establish this claim, Plaintiffs must prove all of the following:

> (1) Defendants manufactured, sold, distributed, or were within the chain of distribution of the Pinnacle Ultamet, or were otherwise responsible for placing the Pinnacle Ultamet into the stream of commerce, or were substantially involved in the Pinnacle Ultamet's manufacturing;

> (2) Defendants were negligent in manufacturing the Pinnacle Ultamet; and

> (3) Defendants' negligence was a substantial factor in causing Plaintiffs' harm.

Negligence is a failure to use reasonable care. Negligence may arise from doing an act that a reasonably prudent person would not have done under the same circumstances, or, on the other hand, from failing to do an act that a reasonably prudent person would have done under the same circumstances.

Negligence requires both a reasonably foreseeable danger of injury to another and conduct that is unreasonable in proportion to that danger. A person is only responsible for the results of his or her conduct if the risk of injury is reasonably foreseeable. The exact occurrence or exact injury does not have to be foreseeable; but injury as a result of negligent conduct must be not merely possible, but probable.

There is negligence if a reasonably prudent person could foresee injury as a result of his or her conduct, and acted unreasonably in the light of what could be foreseen. On the other hand, there is no negligence if a reasonably prudent person could not have

21

foreseen any injury as a result of his or her conduct or acted reasonably in the light of what could have been foreseen.

A manufacturer owes a duty to use reasonable care in the manufacture of such product so that it will be reasonably safe for its intended or foreseeable uses. Reasonable care means that degree of care that a reasonably prudent manufacturer of such a product would use in the making, inspecting, and testing of the product and its materials (and parts) in order to produce a reasonably safe product.

You have heard evidence of the general customs and practices of others who are in the same business or trade as that of Defendants. This evidence is to be considered by you in determining whether the conduct of Defendants was reasonable under the circumstances. Defendants' conduct is not to be considered unreasonable simply because someone else may have used a better or safer practice. On the other hand, a general custom, use, or practice by those in the same business or trade may be considered some evidence of what constitutes reasonable conduct in that trade or business. You must first decide, from the evidence presented in this case, whether there is a general custom or practice in Defendants' trade or business. If you find that there is a custom or practice, you may take that general custom or practice into account in considering the care used by Defendants in this case. However, a general custom or practice is not the only test; what you must decide is whether, taking all the facts and circumstances into account, Defendants acted with reasonable care.

An act or omission is regarded as a cause of an injury if it was a substantial factor in bringing about the injury, that is, if it had such an effect in producing the injury that reasonable people would regard it as a cause of the injury. There may be more than one cause of an injury, but to be substantial, it cannot be slight or trivial. You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it. Where the independent and negligent acts or omissions of two or more parties cause injury to another, each of those negligent acts or omissions is regarded as a cause of that injury provided that it was a substantial factor in bringing about that injury.

Answer "Yes" or "No" with respect to each of the following:

|  | DePuy Orthopaedics, Inc. | Johnson & Johnson |
|---|---|---|
| Ramon Alicea | Yes | Yes |
| Uriel Barzel | Yes | Yes |
| Karen Kirschner | Yes | Yes |
| Hazel Miura | Yes | Yes |
| Eugene Stevens, Jr. | Yes | Yes |
| Michael A. Stevens | Yes | Yes |

## Question 6: Negligent Undertaking

**Did Johnson & Johnson negligently undertake a duty to provide services to DePuy Orthopaedics, Inc. that was a substantial factor in causing harm to the persons listed below?**

Plaintiffs claim that Johnson & Johnson is responsible for their harm because it failed to exercise reasonable care when it undertook to render services to DePuy Orthopaedics related to the Pinnacle Ultamet and such undertaking created or exacerbated a dangerous condition.

To establish this claim, Plaintiffs must prove all of the following:

(1) Johnson & Johnson, voluntarily or for a charge, rendered services to DePuy Orthopaedics, Inc.;

(2) these services were of a kind that Johnson & Johnson should have recognized as necessary for the protection of Plaintiffs;

(3) Johnson & Johnson failed to exercise reasonable care in rendering these services;

(4) Johnson & Johnson's failure to exercise reasonable care was a substantial factor in causing Plaintiffs' harm; and

(5) either

a. Johnson & Johnson's failure to use reasonable care added to the risk of harm, or

b. Johnson & Johnson's services were rendered to perform a duty that DePuy Orthopaedics, Inc. owed to third persons, including Plaintiffs, or

c. Plaintiffs suffered harm because DePuy Orthopaedics, Inc. or Plaintiffs relied on Johnson & Johnson's services.

Negligence is lack of ordinary care. It is a failure to use that degree of care that a reasonably prudent person would have used under the same circumstances.

Negligence may arise from doing an act that a reasonably prudent person would not have done under the same circumstances, or, on the other hand, from failing to do an act that a reasonably prudent person would have done under the same circumstances.

Negligence requires both a reasonably foreseeable danger of injury to another and conduct that is unreasonable in proportion to that danger. A person is only responsible for the results of his or her conduct if the risk of injury is reasonably foreseeable. The exact occurrence or exact injury does not have to be foreseeable; but injury as a result of negligent conduct must be not merely possible, but probable.

There is negligence if a reasonably prudent person could foresee injury as a result of his or her conduct and acted unreasonably in the light of what could be foreseen. On the other hand, there is no negligence if a reasonably prudent person could not have foreseen any injury as a result of his or her conduct or acted reasonably in the light of what could have been foreseen.

An act or omission is regarded as a cause of an injury if it was a substantial factor in bringing about the injury, that is, if it had such an effect in producing the injury that reasonable people would regard it as a cause of the injury. There may be more than one cause of an injury, but to be substantial, it cannot be slight or trivial. You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it.

Answer "Yes" or "No" with respect to each of the following:

Ramon Alicea ___Yes___

Uriel Barzel ___Yes___

Karen Kirschner ___Yes___

Hazel Miura ___Yes___

Eugene Stevens, Jr. ___Yes___

Michael A. Stevens ___Yes___

## Question 7: Negligent Misrepresentation

**Did Defendants negligently make a false representation regarding the Pinnacle Ultamet to the implanting surgeons of the persons listed below, upon which such surgeons justifiably relied and, if so, was such reliance a substantial factor in causing such person's harm?**

Plaintiffs claim that Defendants negligently made one or more false representations related to the Pinnacle Ultamet that harmed them. DePuy Orthopaedics, Inc. denies that it negligently misrepresented these facts and contends that it represented the risks and benefits of the Pinnacle Ultamet to Plaintiffs' implanting surgeons in an accurate manner. J&J denies that it made any representations to any implanting surgeon in this case and contends that it therefore cannot be held liable for any negligent misrepresentation.

To establish this claim, Plaintiffs must prove all of the following:

> (1) the relationship between Defendants and Plaintiffs' surgeons was such that, in morals and good conscience, Defendant was under a duty to exercise reasonable care in conveying correct information regarding the Pinnacle Ultamet;
>
> (2) the information Defendants conveyed to Plaintiffs' implanting physicians was incorrect;
>
> (3) Defendants knew or should have known that Plaintiffs could suffer physical harm if the information they conveyed was incorrect;
>
> (4) it was foreseeable that Plaintiffs' implanting physicians would rely on such information for a serious purpose;
>
> (5) Plaintiffs' implanting physicians reasonably relied on the information; and
>
> (6) Plaintiffs' surgeons' reliance on the information was a substantial factor in causing Plaintiffs' harm.

A person who makes a statement knowing that the statement is required for a particular purpose and that the statement is made for the benefit of another person who is known to rely upon it and may be damaged if it is inaccurate is under a duty to take reasonable care that the statement is accurate. Reasonable care means that degree of care that a reasonably prudent person would use under the same circumstances.

26

Defendants' negligence may consist of failure to exercise reasonable care (a) in ascertaining the accuracy of the information communicated to Plaintiffs' physicians, or (b) in the manner in which it was communicated.

Whether an orthopedic surgeon is justified in relying on a statement depends on whether a reasonable orthopedic surgeon would have implanted the Pinnacle Ultamet without further effort to determine the truth or accuracy of the statement.

A misrepresentation is regarded as a cause of an injury if it was a substantial factor in bringing about the injury, that is, if it had such an effect in producing the injury that reasonable people would regard it as a cause of the injury. There may be more than one cause of an injury, but to be substantial, it cannot be slight or trivial. You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it.

Answer "Yes" or "No" with respect to each of the following:

| | DePuy Orthopaedics, Inc. | Johnson & Johnson |
|---|---|---|
| Ramon Alicea | Yes | Yes |
| Uriel Barzel | Yes | Yes |
| Karen Kirschner | Yes | Yes |
| Hazel Miura | Yes | Yes |
| Eugene Stevens, Jr. | Yes | Yes |
| Michael A. Stevens | Yes | Yes |

## Question 8: Intentional Misrepresentation (Fraud) to Plaintiffs

**Did Defendants knowingly or recklessly make a false representation regarding the Pinnacle Ultamet to the persons listed below upon which such persons reasonably relied and, if so, was such reliance a substantial factor in causing such person's harm?**

Plaintiffs claim that Defendants knowingly or recklessly made one or more false representations that harmed them. DePuy Orthopaedics, Inc. denies that it made false representations and contends that DePuy Orthopaedics, Inc. represented the risks and benefits of the Pinnacle Device to Plaintiffs in an adequate manner. J&J denies that it made any representations to any Plaintiff in this case and contends that it therefore cannot be held liable for any fraud.

To establish this claim, Plaintiffs must prove all of the following by clear and convincing evidence:

(1) Defendants made a statement of material fact;

(2) the statement was false;

(3) Defendants either knew that the statement was false, or made the statement recklessly without regard to whether it was true or false;

(4) Defendants made the statement to convince Plaintiffs to rely upon it;

(5) Plaintiffs did rely on Defendants' statement;

(6) Plaintiffs' reliance was justifiable; and

(7) Plaintiffs sustained damages because of their reliance on Defendants' statement.

Clear and convincing evidence means evidence that satisfies you that there is a high degree of probability that there was fraud as I have defined it for you. To decide for the plaintiff by clear and convincing evidence, it is not enough to find that the preponderance of the evidence is in the plaintiff's favor, which is the standard you have been asked to apply to the other instructions up to this point. A party who must prove his or her case by a preponderance of the evidence only need satisfy you that the evidence supporting his or her case more nearly represents what actually happened than the evidence that is opposed to it. But a party who must establish his or her case by

clear and convincing evidence must satisfy you that the evidence makes it highly probable that what he or she claims is what actually happened.

A statement of fact is material if a reasonable person would consider it important.

A statement is false if, taken as a whole, it communicates something that is untrue when considered from the viewpoint of an ordinary person.

A statement is made recklessly if, at the time the statement is made, the person making it does not have an honest and reasonable belief in its truth.

Misrepresentations of safety to the public at large, for the purpose of influencing the marketing of a product known to be defective, can constitute fraud.

Whether a person is justified in relying on a statement depends on whether a reasonable person would have had the Pinnacle Ultamet implanted without further effort to determine the truth or accuracy of the statement.

A false statement is regarded as a cause of an injury if it was a substantial factor in bringing about the injury, that is, if it had such an effect in producing the injury that reasonable people would regard it as a cause of the injury. There may be more than one cause of an injury, but to be substantial, it cannot be slight or trivial. You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it.

**Answer "Yes" or "No" with respect to each of the following:**

|  | DePuy Orthopaedics, Inc. | Johnson & Johnson |
|---|---|---|
| **Ramon Alicea** | No | No |
| **Uriel Barzel** | No | No |
| **Karen Kirschner** | No | No |
| **Hazel Miura** | No | No |
| **Eugene Stevens, Jr.** | No | No |
| **Michael A. Stevens** | No | No |

## Question 9: Intentional Misrepresentation (Fraud) to Plaintiffs' Implanting Surgeons

**Did Defendants knowingly or recklessly make a false representation regarding the Pinnacle Ultamet to the implanting surgeons of the persons listed below upon which such implanting surgeons reasonably relied and, if so, was such reliance a substantial factor in causing such person's harm?**

Plaintiffs claim that Defendants knowingly or recklessly made one or more false representations to Plaintiffs' implanting surgeons that harmed them. DePuy Orthopaedics, Inc. denies that it made false representations and contends that DePuy Orthopaedics, Inc. represented the risks and benefits of the Pinnacle Device to plaintiffs' implanting surgeons in an adequate manner. J&J denies that it made any representations to any implanting surgeon in this case and contends that it therefore cannot be held liable for any fraud.

To establish this claim, Plaintiffs must prove all of the following by clear and convincing evidence:

(1) Defendants made a statement of material fact;

(2) the statement was false;

(3) Defendants either knew that the statement was false, or made the statement recklessly without regard to whether it was true or false;

(4) Defendants made the statement to convince Plaintiffs' implanting surgeons to rely upon it;

(5) Plaintiffs' implanting surgeons did rely on Defendants' statement;

(6) Plaintiffs' implanting surgeons reliance was justifiable; and

(7) Plaintiffs sustained damages because of their implanting surgeons reliance on Defendants' statement.

Clear and convincing evidence means evidence that satisfies you that there is a high degree of probability that there was fraud as I have defined it for you. To decide for the plaintiff by clear and convincing evidence, it is not enough to find that the preponderance of the evidence is in the plaintiff's favor. A party who must prove his or her case by a preponderance of the evidence only need satisfy you that the evidence supporting his or her case more nearly represents what actually happened than the

evidence that is opposed to it. But a party who must establish his or her case by clear and convincing evidence must satisfy you that the evidence makes it highly probable that what he or she claims is what actually happened.

A statement of fact is material if a reasonable orthopedic surgeon would consider it important.

A statement is false if, taken as a whole, it communicates something that is untrue when considered from the viewpoint of an ordinary orthopedic surgeon.

A statement is made recklessly if, at the time the statement is made, the person making it does not have an honest and reasonable belief in its truth.

Misrepresentations of safety to the public at large, for the purpose of influencing the marketing of a product known to be defective, can constitute fraud.

Whether an orthopedic surgeon is justified in relying on a statement depends on whether a reasonable orthopedic surgeon would have implanted the Pinnacle Ultamet without further effort to determine the truth or accuracy of the statement.

A false statement is regarded as a cause of an injury if it was a substantial factor in bringing about the injury, that is, if it had such an effect in producing the injury that reasonable people would regard it as a cause of the injury. There may be more than one cause of an injury, but to be substantial, it cannot be slight or trivial. You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it.

Answer "Yes" or "No" with respect to each of the following:

| | DePuy Orthopaedics, Inc. | Johnson & Johnson |
|---|---|---|
| Ramon Alicea | Yes | Yes |
| Uriel Barzel | Yes | Yes |
| Karen Kirschner | Yes | Yes |
| Hazel Miura | Yes | Yes |
| Eugene Stevens, Jr. | Yes | Yes |
| Michael A. Stevens | Yes | Yes |

31

## Question 10: Fraudulent Concealment from Plaintiffs

**Did Defendants fail to disclose facts about the Pinnacle Ultamet with the intent to deceive the persons listed below, and, if so, was such concealment a substantial factor in causing such person's harm?**

Plaintiffs claim that Defendants concealed information regarding the Pinnacle Ultamet's risks with the intention of deceiving the public as to the device's safety and effectiveness and that such concealment harmed them. DePuy Orthopaedics, Inc. denies that it committed fraudulent concealment and contends that it properly disclosed the known risks associated with use of the Pinnacle Device to plaintiffs. J&J denies that it made any representations to plaintiffs in this case, and it contends that it therefore had no duty to disclose any information about the Pinnacle Device and cannot be held liable for any fraudulent omission.

To establish this claim, Plaintiffs must prove all of the following by clear and convincing evidence:

> (1) Defendants failed to disclose certain facts regarding the Pinnacle Ultamet;

> (2) Defendants knew these facts;

> (3) either

>> a. these facts were not known to Plaintiffs and could not have been discovered by Plaintiffs through the use of ordinary intelligence; or

>> b. Defendant disclosed some facts to Plaintiffs but intentionally failed to disclose other facts, making the disclosure deceptive;

> (4) Defendants failed to disclose these facts because they believed that Plaintiffs would not have chosen the device if they knew the facts;

> (5) Plaintiffs would not have chosen the Pinnacle Ultamet if they knew these facts; and

> (6) Plaintiffs sustained damages because they were implanted with the Pinnacle Ultamet.

Clear and convincing evidence means evidence that satisfies you that there is a high degree of probability that there was fraudulent concealment as I have defined it for

you. To decide for a plaintiff by clear and convincing evidence, it is not enough to find that the preponderance of the evidence is in the plaintiff's favor. A party who must prove his or her case by a preponderance of the evidence only need satisfy you that the evidence supporting his or her case more nearly represents what actually happened than the evidence that is opposed to it. But a party who must establish his or her case by clear and convincing evidence must satisfy you that the evidence makes it highly probable that what he or she claims is what actually happened.

Defendants may be held liable for fraudulent concealment if they were aware the Pinnacle Ultamet was defective and that such defect represented a real danger to the public, yet concealed the defect with the intention of deceiving the public as to the device's continued fitness for use, and the defective device caused Plaintiffs' injuries.

If a company undertakes to speak with respect to a matter, either voluntarily or in response to inquiries, it is not only bound to state truthfully what is told, but must not suppress or conceal any facts within its knowledge which will materially qualify those stated; if the company speaks at all, it must make a full and fair disclosure.

An omission is regarded as a cause of an injury if it was a substantial factor in bringing about the injury, that is, if it had such an effect in producing the injury that reasonable people would regard it as a cause of the injury. There may be more than one cause of an injury, but to be substantial, it cannot be slight or trivial. You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it. Where the independent and negligent acts or omissions of two or more parties cause injury to another, each of those negligent acts or omissions is regarded as a cause of that injury provided that it was a substantial factor in bringing about that injury.

Answer "Yes" or "No" with respect to each of the following:

| | DePuy Orthopaedics, Inc. | Johnson & Johnson |
|---|---|---|
| Ramon Alicea | Yes | Yes |
| Uriel Barzel | Yes | Yes |
| Karen Kirschner | Yes | Yes |
| Hazel Miura | Yes | Yes |
| Eugene Stevens, Jr. | Yes | Yes |
| Michael A. Stevens | Yes | Yes |

## Question 11: Fraudulent Concealment from Plaintiffs' Implanting Surgeons

**Did Defendants fail to disclose facts about the Pinnacle Ultamet with the intent to deceive the implanting surgeons of the persons listed below, and, if so, was such concealment a substantial factor in causing such person's harm?**

Plaintiffs claim that Defendants concealed information regarding the Pinnacle Ultamet's risks with the intention of deceiving the public as to the device's safety and effectiveness and that such concealment harmed them. DePuy Orthopaedics, Inc. denies that it committed fraudulent concealment and contends that it properly disclosed the known risks associated with use of the Pinnacle Device to plaintiffs' implanting surgeons. J&J denies that it made any representations to the implanting surgeons in this case, and it contends that it therefore had no duty to disclose any information about the Pinnacle Device and cannot be held liable for any fraudulent omission.

To establish this claim, Plaintiffs must prove all of the following by clear and convincing evidence:

(1) Defendants failed to disclose certain facts regarding the Pinnacle Ultamet;

(2) Defendants knew these facts;

(3) either

a. these facts were not known to Plaintiffs' implanting surgeons, and could not have been discovered by Plaintiffs' implanting surgeons through the use of ordinary intelligence; or

b. Defendant disclosed some facts to Plaintiffs' implanting surgeons, but intentionally failed to disclose other facts, making the disclosure deceptive;

(4) Defendants failed to disclose these facts because they believed that Plaintiffs' implanting surgeons would not have chosen the device if they knew the facts;

(5) Plaintiffs' implanting surgeons would not have chosen the Pinnacle Ultamet if they knew these facts; and

34

(6) Plaintiffs sustained damages because they were implanted with the
Pinnacle Ultamet.

Clear and convincing evidence means evidence that satisfies you that there is a high
degree of probability that there was fraudulent concealment as I have defined it for
you. To decide for the plaintiff by clear and convincing evidence, it is not enough to
find that the preponderance of the evidence is in the plaintiff's favor. A party who
must prove his or her case by a preponderance of the evidence only need satisfy you
that the evidence supporting his or her case more nearly represents what actually
happened than the evidence that is opposed to it. But a party who must establish his
or her case by clear and convincing evidence must satisfy you that the evidence makes
it highly probable that what he or she claims is what actually happened.

Defendants may be held liable for fraudulent concealment if they were aware the
Pinnacle Ultamet was defective and that such defect represented a real danger to the
public, yet concealed the defect with the intention of deceiving the public as to the
device's continued fitness for use, and the defective device caused Plaintiffs' injuries.

If a company undertakes to speak with respect to a matter, either voluntarily or in
response to inquiries, it is not only bound to state truthfully what is told but must not
suppress or conceal any facts within its knowledge which will materially qualify those
stated; if the company speaks at all, it must make a full and fair disclosure.

An omission is regarded as a cause of an injury if it was a substantial factor in bringing
about the injury, that is, if it had such an effect in producing the injury that reasonable
people would regard it as a cause of the injury. There may be more than one cause of
an injury, but to be substantial, it cannot be slight or trivial. You may, however, decide
that a cause is substantial even if you assign a relatively small percentage to it. Where
the independent and negligent acts or omissions of two or more parties cause injury to
another, each of those negligent acts or omissions is regarded as a cause of that injury
provided that it was a substantial factor in bringing about that injury.

Answer "Yes" or "No" with respect to each of the following:

|  | DePuy Orthopaedics, Inc. | Johnson & Johnson |
|---|---|---|
| Ramon Alicea | Yes | Yes |
| Uriel Barzel | Yes | Yes |
| Karen Kirschner | Yes | Yes |
| Hazel Miura | Yes | Yes |
| Eugene Stevens, Jr. | Yes | Yes |
| Michael A. Stevens | Yes | Yes |

### Question 12: Deceptive Business Practices/General Business Law § 349 - Plaintiffs

**Did Defendants engage in materially deceptive or misleading acts or practices related to the Pinnacle Ultamet that resulted in harm to the persons listed below?**

Plaintiffs claim that Defendants engaged in materially deceptive or misleading business acts or practices related to the Pinnacle Ultamet that harmed them. DePuy Orthopaedics, Inc. denies this allegation and contends that it disclosed the known risks of the Pinnacle Ultamet. J&J denies that it marketed the Pinnacle Ultamet and contends that it therefore cannot be held liable for any violation of General Business Law § 349.

To establish this claim, Plaintiffs must prove all of the following:

> (1) that Defendants engaged in an act or practice that was deceptive or misleading in a material way;

> (2) that the act or practice was performed in the conduct of business, trade or commerce, or in the furnishing of a service;

> (3) that the act or practice was consumer-oriented; and

> (4) Plaintiffs suffered detriment or injury as a result of such act or practice.

A deceptive act or practice is a representation or omission likely to mislead a reasonable consumer acting reasonably under the circumstances. An act or practice is deceptive or misleading in a material way if a reasonable consumer would consider it important.

It is not necessary for Plaintiffs to prove that they relied on Defendants' deceptive or misleading acts or practices. Nor is it necessary for Plaintiffs to prove Defendants intended to defraud or mislead the consuming public at large.

Where a defendant deals with a plaintiff in the same way as it would deal with any other customer, such conduct is considered consumer-oriented. Additionally, conduct involving an extensive marketing scheme or the multimedia dissemination of information to the public is considered consumer-oriented.

Answer "Yes" or "No" with respect to each of the following:

| | DePuy Orthopaedics, Inc. | Johnson & Johnson |
|---|---|---|
| Ramon Alicea | Yes | Yes |
| Uriel Barzel | Yes | Yes |
| Karen Kirschner | Yes | Yes |
| Hazel Miura | Yes | Yes |
| Eugene Stevens, Jr. | Yes | Yes |
| Michael A. Stevens | Yes | Yes |

## <u>Question 13: Deceptive Business Practices/General Business Law § 349 –</u>
## <u>Plaintiffs' Implanting Surgeons</u>

**Did Defendants engage in materially deceptive or misleading acts or practices related to the Pinnacle Ultamet that resulted in harm to the persons listed below?**

Plaintiffs claim that Defendants engaged in materially deceptive or misleading business acts or practices related to the Pinnacle Ultamet that harmed them. DePuy Orthopaedics, Inc. denies this allegation and contends that it disclosed the known risks of the Pinnacle Ultamet. J&J denies that it marketed the Pinnacle Ultamet and contends that it therefore cannot be held liable for any violation of General Business Law § 349.

To establish this claim, Plaintiffs must prove all of the following:

> (1) that Defendants engaged in an act or practice that was deceptive or misleading in a material way;

> (2) that the act or practice was performed in the conduct of business, trade or commerce, or in the furnishing of a service;

> (3) that the act or practice was aimed at the community of orthopedic surgeons at large; and

> (4) Plaintiffs suffered detriment or injury as a result of such act or practice.

A deceptive act or practice is a representation or omission likely to mislead a reasonable orthopedic surgeon acting reasonably under the circumstances. An act or practice is deceptive or misleading in a material way if a reasonable orthopedic surgeon would consider it important.

It is not necessary for Plaintiffs to prove that their implanting physicians relied on Defendants' deceptive or misleading acts or practices. Nor is it necessary for Plaintiffs to prove Defendants intended to defraud or mislead the community of orthopedic surgeons at large.

Conduct is aimed at the community of orthopedic surgeons at large when it has a broad impact on the community of orthopedic surgeons at large.

39

Answer "Yes" or "No" with respect to each of the following:

|                      | DePuy Orthopaedics, Inc. | Johnson & Johnson |
|----------------------|--------------------------|-------------------|
| Ramon Alicea         | Yes                      | Yes               |
| Uriel Barzel         | Yes                      | Yes               |
| Karen Kirschner      | Yes                      | Yes               |
| Hazel Miura          | Yes                      | Yes               |
| Eugene Stevens, Jr.  | Yes                      | Yes               |
| Michael A. Stevens   | Yes                      | Yes               |

## Question 14: Aiding and Abetting

**For each of claims listed below, did Johnson & Johnson knowingly give substantial assistance or encouragement to the tortious conduct of DePuy Orthopaedics, Inc., if any, related to the Pinnacle Ultamet and, if so, was such assistance or encouragement a substantial factor in causing injury to the persons listed below?**

Plaintiffs claim that they were harmed by DePuy Orthopaedics, Inc.'s tortious conduct and that Johnson & Johnson is responsible for the harm because it aided and abetted DePuy Orthopaedics, Inc. in committing such tortious conduct. If you find that DePuy Orthopaedics, Inc. committed tortious conduct that harmed Plaintiffs, then you must determine whether Johnson & Johnson is also responsible for the harm. Johnson & Johnson is responsible as an aider and abetter if Plaintiffs prove all of the following:

> (1) Johnson & Johnson knew that the tortious conduct was being, or was going to be, committed by DePuy Orthopaedics, Inc. against Plaintiffs;

> (2) Johnson & Johnson gave substantial assistance or encouragement to DePuy Orthopaedics, Inc.; and

> (3) Johnson & Johnson's conduct was a substantial factor in causing harm to Plaintiffs.

The knowledge element requires a showing of actual knowledge of the tortious conduct, as discerned from the surrounding circumstances.

Substantial assistance exists where the aiding and abetting party affirmatively assists, helps conceal, or, by virtue of failing to act when required to do so, enables the tortious conduct to proceed.

An act or omission is regarded as a cause of an injury if it was a substantial factor in bringing about the injury, that is, if it had such an effect in producing the injury that reasonable people would regard it as a cause of the injury. There may be more than one cause of an injury, but to be substantial, it cannot be slight or trivial. You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it.

*Answer subpart (a) only if you have answered "Yes" as to DePuy Orthopaedics, Inc. to Question #2 (Negligent Design) for the persons listed below. Otherwise, do not answer the portion of subpart (a) pertaining to such Plaintiff.*

41

(a) Did Johnson & Johnson knowingly give substantial assistance or encouragement to the negligence (Negligent Design) of DePuy Orthopaedics, Inc. related to the Pinnacle Ultamet and, if so, was such assistance or encouragement a substantial factor in causing injury to the persons listed below?

Answer "Yes" or "No" with respect to each of the following:

Ramon Alicea _____Yes_____

Uriel Barzel _____Yes_____

Karen Kirschner _____Yes_____

Hazel Miura _____Yes_____

Eugene Stevens, Jr. _____Yes_____

Michael A. Stevens _____Yes_____

*Answer subpart (b) only if you have answered "Yes" as to DePuy Orthopaedics, Inc. to Question #5 (Negligent Manufacture) for the persons listed below. Otherwise, do not answer the portion of subpart (b) pertaining to such Plaintiff.*

(b) Did Johnson & Johnson knowingly give substantial assistance or encouragement to the negligence (Negligent Manufacture) of DePuy Orthopaedics, Inc. related to the Pinnacle Ultamet and, if so, was such assistance or encouragement a substantial factor in causing injury to the persons listed below?

Answer "Yes" or "No" with respect to each of the following:

Ramon Alicea _____Yes_____

Uriel Barzel _____Yes_____

Karen Kirschner _____Yes_____

Hazel Miura _____Yes_____

Eugene Stevens, Jr. _____Yes_____

Michael A. Stevens _____Yes_____

*Answer subpart (c) only if you have answered "Yes" as to DePuy Orthopaedics, Inc. to Question #7 (Negligent Misrepresentation) for the persons listed below. Otherwise, do not answer the portion of subpart (c) pertaining to such Plaintiff.*

(c) Did Johnson & Johnson knowingly give substantial assistance or encouragement to the negligent misrepresentations to Plaintiffs' implanting physicians by DePuy Orthopaedics, Inc. related to the Pinnacle Ultamet and, if so, was such assistance or encouragement a substantial factor in causing injury to the persons listed below?

Answer "Yes" or "No" with respect to each of the following:

Ramon Alicea _____Yes_____

Uriel Barzel _____Yes_____

Karen Kirschner _____Yes_____

Hazel Miura _____Yes_____

Eugene Stevens, Jr. _____Yes_____

Michael A. Stevens _____Yes_____

*Answer subpart (d) only if you have answered "Yes" as to DePuy Orthopaedics, Inc. to Question #8 (Intentional Misrepresentation (Fraud) to Plaintiffs) for the persons listed below. Otherwise, do not answer the portion of subpart (d) pertaining to such Plaintiff.*

(d) Did Johnson & Johnson knowingly give substantial assistance or encouragement to the intentional misrepresentations to Plaintiffs by DePuy Orthopaedics, Inc. related to the Pinnacle Ultamet and, if so, was such assistance or encouragement a substantial factor in causing injury to the persons listed below?

43

Answer "Yes" or "No" with respect to each of the following:

Ramon Alicea      _____

Uriel Barzel      _____

Karen Kirschner      _____

Hazel Miura      _____

Eugene Stevens, Jr. _____

Michael A. Stevens _____

*Answer subpart (e) only if you have answered "Yes" as to DePuy Orthopaedics, Inc. to Question#9 (Intentional Misrepresentation (Fraud) to Plaintiffs' Implanting Physicians) for the persons listed below. Otherwise, do not answer the portion of subpart (e) pertaining to such Plaintiff.*

(e) Did Johnson & Johnson knowingly give substantial assistance or encouragement to the intentional misrepresentations to Plaintiffs' implanting physicians by DePuy Orthopaedics, Inc. related to the Pinnacle Ultamet and, if so, was such assistance or encouragement a substantial factor in causing injury to the persons listed below?

Answer "Yes" or "No" with respect to each of the following:

Ramon Alicea      _Yes_

Uriel Barzel      _Yes_

Karen Kirschner      _Yes_

Hazel Miura      _Yes_

Eugene Stevens, Jr. _Yes_

Michael A. Stevens _Yes_

*Answer subpart (f) only if you have answered "Yes" as to DePuy Orthopaedics, Inc. to Question # 10 (Fraudulent Concealment from Plaintiffs) for the persons listed below. Otherwise, do not answer the portion of subpart (f) pertaining to such Plaintiff.*

(f) Did Johnson & Johnson knowingly give substantial assistance or encouragement to the fraudulent concealment of facts related to the Pinnacle Ultamet by DePuy Orthopaedics, Inc. from Plaintiffs, and, if so, was such assistance or encouragement a substantial factor in causing injury to the persons listed below?

Answer "Yes" or "No" with respect to each of the following:

Ramon Alicea          Yes

Uriel Barzel          Yes

Karen Kirschner       Yes

Hazel Miura           Yes

Eugene Stevens, Jr.   Yes

Michael A. Stevens    Yes

*Answer subpart (g) only if you have answered "Yes" as to DePuy Orthopaedics, Inc. to Question # 11 (Fraudulent Concealment from Plaintiffs' Implanting Surgeons) for the persons listed below. Otherwise, do not answer the portion of subpart (g) pertaining to such Plaintiff.*

(g) Did Johnson & Johnson knowingly give substantial assistance or encouragement to the fraudulent concealment of facts related to the Pinnacle Ultamet by DePuy Orthopaedics, Inc. from Plaintiffs' implanting physicians, and, if so, was such assistance or encouragement a substantial factor in causing injury to the persons listed below?

Answer "Yes" or "No" with respect to each of the following:

Ramon Alicea          Yes

Uriel Barzel          Yes

Karen Kirschner       Yes

45



Hazel Miura _____Yes_____

Eugene Stevens, Jr. _____Yes_____

Michael A. Stevens _____Yes_____

*Answer subpart (h) only if you have answered "Yes" as to DePuy Orthopaedics, Inc. to Question #12 (Deceptive Business Practices/General Business Law §349 – Plaintiffs) for the persons listed below. Otherwise, do not answer the portion of subpart (h) pertaining to such Plaintiff.*

(h) Did Johnson & Johnson knowingly give substantial assistance or encouragement to the deceptive or misleading business practices or acts of DePuy Orthopaedics, Inc., directed to the Plaintiffs' implanting surgeons and related to the Pinnacle Ultamet and, if so, was such assistance or encouragement a substantial factor in causing injury to the persons listed below?

Answer "Yes" or "No" with respect to each of the following:

Ramon Alicea _____Yes_____

Uriel Barzel _____Yes_____

Karen Kirschner _____Yes_____

Hazel Miura _____Yes_____

Eugene Stevens, Jr. _____Yes_____

Michael A. Stevens _____Yes_____

*Answer subpart (i) only if you have answered "Yes" as to DePuy Orthopaedics, Inc. to Question #13 (Deceptive Business Practices/General Business Law §349 – Plaintiffs' Implanting Surgeons) for the persons listed below. Otherwise, do not answer the portion of subpart (i) pertaining to such Plaintiff.*

(i) Did Johnson & Johnson knowingly give substantial assistance or encouragement to the deceptive or misleading business practices or acts of DePuy Orthopaedics, Inc., directed to the Plaintiffs' implanting surgeons and

related to the Pinnacle Ultamet and, if so, was such assistance or encouragement a substantial factor in causing injury to the persons listed below?

Answer "Yes" or "No" with respect to each of the following:

Ramon Alicea _____Yes_____

Uriel Barzel _____Yes_____

Karen Kirschner _____Yes_____

Hazel Miura _____Yes_____

Eugene Stevens, Jr. _____Yes_____

Michael A. Stevens _____Yes_____

## Question 15: Compensatory Damages

My charge to you on the law of damages must not be taken as a suggestion that you should find for the plaintiffs. It is for you to decide on the evidence presented and the rules of law I have given you whether the plaintiffs are entitled to recover from the defendant. If you decide that the plaintiffs are not entitled to recover from the defendant, you need not consider damages. Only if you decide that the plaintiff is entitled to recover will you consider the measure of damages.

If you find that a plaintiff is entitled to recover from a defendant, you must render a verdict in a sum of money that will justly and fairly compensate the plaintiff for all losses resulting from the injuries and disabilities he or she sustained. This compensation is called "damages."

An award of compensatory damages is meant to place the plaintiff in the same position as he or she was prior to the wrongdoing, without providing the recovery of any windfall. If you decide that Defendants are liable to a plaintiff, the plaintiff is entitled to recover a sum of money which will justly and fairly compensate him or her for any injury, disability and conscious pain and suffering caused by Defendants. Here, the plaintiffs claim the following specific items of compensatory damages: pain and suffering for personal injuries and medical expenses.

If you make an award for any item of damages to be incurred in the future, then for each such item, you must state the period of years over which the amount awarded is intended to provide compensation, and the amount you fix must represent the full amount awarded to Plaintiff for that item of damage for that future period without reduction to present value.

You may not award a plaintiff damages to compensate him or her for a condition that he or she had before being implanted with a Pinnacle Device. However, the fact that Plaintiff may have a physical or mental condition that makes him or her more susceptible to injury than a normal healthy person does not relieve Defendants of liability for all injuries sustained as a result of its tortious conduct. Defendants are liable even though those injuries are greater than those that would have been sustained by a normal healthy person under the same circumstances.

Pain and Suffering:

If you decide for a plaintiff on the question of liability, the plaintiff will be entitled to recover a sum of money which will justly and fairly compensate him or her for any injury, disability, disfigurement, and conscious pain and suffering to date caused by Defendants. You must also include in your verdict damages for any mental suffering,

emotional and psychological injury and any physical consequences resulting from the emotional distress caused by the wrongful act of Defendants.

In determining the amount, if any, to be awarded Plaintiff for pain and suffering, you may take into consideration the effect that Plaintiff's injuries have had on Plaintiff's ability to enjoy life. Loss of enjoyment of life involves the loss of the ability to perform daily tasks, to participate in the activities which were a part of the person's life before the injury, and to experience the pleasures of life. However, a person suffers the loss of enjoyment of life only if the person is aware, at some level, of the loss that he or she has suffered.

If you find that Plaintiff, as a result of his or her injuries, suffered some loss of the ability to enjoy life and that Plaintiff was aware, at some level, of a loss, you may take that loss into consideration in determining the amount to be awarded to Plaintiff for pain and suffering.

With respect to any of Plaintiff's injuries or disabilities, Plaintiff is entitled to recover for future pain, suffering, and disability and the loss of his or her ability to enjoy life. In this regard you should take into consideration the period of time that the injuries or disabilities are expected to continue. If you find that the injuries or disabilities are permanent, you should take into consideration the period of time that Plaintiff can be expected to live. In your verdict you will state separately the amount awarded for pain and suffering to date, if any, and, if you make an award for future pain and suffering, you will state in your verdict the amount awarded and the period of years over which such award is intended to provide compensation.  Do not state an amount per year but only a total amount for the entire period.

Medical Expenses:

If you decide for a plaintiff on the question of liability, the plaintiff will be entitled to recover the amount of any reasonable expenditures for medical services and medicines, including physician's charges, nursing charges, hospital expenses, diagnostic expenses and X-ray charges.  Thus, you will include in your verdict the amount that you find from the evidence to be the fair and reasonable amount of the medical expenses necessarily incurred as a result of the plaintiff's injuries.

If you find that a plaintiff will need medical, hospital, or nursing expenses in the future, you will include in your verdict an amount for those anticipated medical, hospital and nursing expenses which are reasonably certain to be incurred in the future and that were necessitated by the plaintiff's injuries.  If you find that a plaintiff is entitled to an award for medical expenses to be incurred in the future, you will fix the dollar amount of expenses over the entire period that you find that the plaintiff will incur such

expenses and include that amount in your verdict.  In your verdict you will state separately the amount awarded for medical expenses to date, if any, and, if you make an award for future medical, you will state in your verdict the amount awarded and the period of years over which such award is intended to provide compensation.  Do not state an amount per year but only a total amount for the entire period.

You must not speculate or guess in awarding damages.  The arguments of the attorneys are not evidence of damages.  Your award must be based on your reasoned judgment applied to the testimony of the witnesses and the other evidence that has been admitted during trial.

*Answer Question #15 as to a particular Plaintiff if you answered "Yes" to any of the preceding Questions with respect to such Plaintiff.  Otherwise, do not answer the subpart of Question #15 pertaining to such Plaintiff.*

**Answer in dollars and cents, if any, with respect to each of the following:**

(a)     Personal Injury Damages of Ramon Alicea

State separately the amount awarded for the following items of damages, if any, from the time of the occurrence up to the date of your verdict:

1. Past medical expenses
Answer: $ 53,480.19

2. Past pain and suffering
Answer: $ 1,000,000

State separately the amount awarded for the following items of damages, if any, to be incurred in the future, along with the period of time (in years) over which the amount awarded is intended to provide compensation:

3. Future medical expenses
Answer: $ 1,500,000   for 23 years

4. Future pain and suffering, including the permanent effect of the injury, from the time of verdict to the time that Plaintiff could be expected to live.
Answer: $ 9,000,000   for 23 years

(b)     Personal Injury Damages of Uriel Barzel

State separately the amount awarded for the following items of damages, if any, from the time of the occurrence up to the date of your verdict:

1. Past medical expenses
Answer: $ 264,201.45

2. Past pain and suffering
Answer: $ 3,000,000

State separately the amount awarded for the following items of damages, if any, to be incurred in the future, along with the period of time (in years) over which the amount awarded is intended to provide compensation:

3. Future medical expenses
Answer: $ 1,325,000   for 5 years

4. Future pain and suffering, including the permanent effect of the injury, from the time of verdict to the time that Plaintiff could be expected to live.
Answer: $ 6,250,000   for 5 years

(c)     Personal Injury Damages of Karen Kirschner

State separately the amount awarded for the following items of damages, if any, from the time of the occurrence up to the date of your verdict:

1. Past medical expenses
Answer: $ 137,422.94

2. Past pain and suffering
Answer: $ 2,500,000

State separately the amount awarded for the following items of damages, if any, to be incurred in the future, along with the period of time (in years) over which the amount awarded is intended to provide compensation:

3. Future medical expenses
Answer: $ 3,000,000 for 21 years

51

4. Future pain and suffering, including the permanent effect of the injury, from the time of verdict to the time that Plaintiff could be expected to live.
Answer: $ _15,000,000_ for _21_ years

(d)   Personal Injury Damages of Hazel Miura

State separately the amount awarded for the following items of damages, if any, from the time of the occurrence up to the date of your verdict:

1. Past medical expenses
Answer: $ _68,791.44_

2. Past pain and suffering
Answer: $ _2,000,000_

State separately the amount awarded for the following items of damages, if any, to be incurred in the future, along with the period of time (in years) over which the amount awarded is intended to provide compensation:

3. Future medical expenses
Answer: $ _2,000,000_ for _27_ years

4. Future pain and suffering, including the permanent effect of the injury, from the time of verdict to the time that Plaintiff could be expected to live.
Answer: $ _12,000,000_ for _27_ years

(e)   Personal Injury Damages of Eugene Stevens, Jr.

State separately the amount awarded for the following items of damages, if any, from the time of the occurrence up to the date of your verdict:

1. Past medical expenses
Answer: $ _64,189.63_

2. Past pain and suffering
Answer: $ _800,000_

State separately the amount awarded for the following items of damages, if any, to be incurred in the future, along with the period of time (in years) over which the amount awarded is intended to provide compensation:

3. Future medical expenses
Answer: $ _1,500,000_   for _27_ years

4. Future pain and suffering, including the permanent effect of the injury, from the time of verdict to the time that Plaintiff could be expected to live.
Answer: $ _7,000,000_   for _27_ years

(f)   Personal Injury Damages of Michael A. Stevens

State separately the amount awarded for the following items of damages, if any, from the time of the occurrence up to the date of your verdict:

1. Past medical expenses
Answer: $ _35,705.57_

2. Past pain and suffering
Answer: $ _800,000_

State separately the amount awarded for the following items of damages, if any, to be incurred in the future, along with the period of time (in years) over which the amount awarded is intended to provide compensation:

3. Future medical expenses
Answer: $ _1,000,000_   for _30_ years

4. Future pain and suffering, including the permanent effect of the injury, from the time of verdict to the time that Plaintiff could be expected to live.
Answer: $ _7,500,000_   for _30_ years

## Question 16: Loss of Consortium

Each of the Plaintiffs listed below claims that she has been harmed by the injury to her spouse. If you find that her injured spouse is entitled to recover, you will award the below Plaintiff damages for the monetary value of lost services and society which you find the below Plaintiff sustained by the loss of her spouse's services and society.

In deciding the amount of such damages, you may take into consideration the nature and extent of the injured spouse's services and society before the injury, including his or her disposition, temperament, character, and attainments; the interest he or she showed in his or her home; the social life of his or her family and in the comfort, happiness, education, and general welfare of the members of the family; the services he or she rendered in superintending the household, training the children, assisting his or her spouse in the management of the business or affairs in which the spouse was engaged, if any; his or her acts of affection, love, and sexual intercourse and the extent to which the injuries he or she sustained prevented him or her from performing such services and providing such society.

You will award the below Plaintiffs such an amount based upon the evidence and upon your own observation, experience, and knowledge conscientiously applied to the facts and circumstances as in your judgment will compensate him or her for the monetary value of the lost services and society that you find he or she has sustained and is reasonably certain to sustain in the future by reason of his or her spouse's inability to perform such services and provide such society as a result of his or her injuries.

Your award, if any, for loss of spousal services and society will be in separate amounts for past and future damages. In addition, you will state the number of years over which your award for future damages is meant to cover.

*Answer subpart (a) only if you have answered "Yes" as to Plaintiff Ramon Alicea on any claim. Otherwise, do not answer subpart (a).*

(a)     Carole Alicea

If you found in favor of plaintiff Ramon Alicea on any claim, you must next determine if the injury caused by Defendants with respect to that claim caused real injury to the marital relationship of Ramon Alicea and Carole Alicea such that Carole Alicea suffered a loss of the continuance of the marital relationship as it existed at its inception.

Did Carole Alicea suffer a real injury to her marriage relationship with Ramon Alicea? Answer "Yes" or No" _Yes_

54

If you find that Carole Alicea did suffer such a loss, you must next determine what amount of money would fairly and reasonably compensate her for real injuries to her marital relationship that were caused by DePuy Orthopaedics, Inc. Answer separately, in dollars and cents.

Past Loss of Consortium Damages: $ _500,000_

Future Loss of Consortium Damages: $ _—0—_ for _0_ years

*Answer subpart (b) only if you have answered "Yes" as to Plaintiff Uriel Barzel on any claim. Otherwise, do not answer subpart (b).*

(b)   Aviva Barzel

If you found in favor of plaintiff Uriel Barzel on any claim, you must next determine if the injury caused by DePuy Orthopaedics, Inc.'s actions with respect to that claim caused real injury to the marital relationship of Uriel Barzel and Aviva Barzel such that Aviva Barzel suffered a loss of the continuance of the marital relationship as it existed at its inception.

Did Aviva Barzel suffer a real injury to her marriage relationship with Uriel Barzel? Answer "Yes" or No" _Yes_

If you find that Aviva Barzel did suffer such a loss, you must next determine what amount of money would fairly and reasonably compensate her for real injuries to her marital relationship that were caused by DePuy Orthopaedics, Inc. Answer separately, in dollars and cents.

Past Loss of Consortium Damages: $ _600,000_

Future Loss of Consortium Damages: $ _-0-_ for _0_ years

*Answer subpart (c) only if you have answered "Yes" as to Plaintiff Eugene Stevens on any claim. Otherwise, do not answer subpart (c).*

(c)   Yolanda Stevens

If you found in favor of plaintiff Eugene Stevens on any claim, you must next determine if the injury caused by DePuy Orthopaedics, Inc.'s actions with respect to that claim caused real injury to the marital relationship of Eugene Stevens and Yolanda Stevens

such that Yolanda Stevens suffered a loss of the continuance of the marital relationship as it existed at its inception.

Did Yolanda Stevens suffer a real injury to her marriage relationship with Eugene Stevens?  Answer "Yes" or No" _Yes_

If you find that Yolanda Stevens did suffer such a loss, you must next determine what amount of money would fairly and reasonably compensate her for real injuries to her marital relationship that were caused by DePuy Orthopaedics, Inc.  Answer separately, in dollars and cents.

Past Loss of Consortium Damages: $ _100,000_

Future Loss of Consortium Damages: $ _–0–_ for _0_ years

*Answer subpart (d) only if you have answered "Yes" as to Plaintiff Michael Stevens on any claim. Otherwise, do not answer subpart (d).*

(d)   Audra L. Stevens

If you found in favor of plaintiff Michael Stevens on any claim, you must next determine if the injury caused by DePuy Orthopaedics, Inc.'s actions with respect to that claim caused real injury to the marital relationship of Michael Stevens and Audra Stevens such that Audra Stevens suffered a loss of the continuance of the marital relationship as it existed at its inception.

Did Audra Stevens suffer a real injury to her marriage relationship with Michael Stevens?  Answer "Yes" or No" _Yes_

If you find that Audra Stevens did suffer such a loss, you must next determine what amount of money would fairly and reasonably compensate her for real injuries to her marital relationship that were caused by DePuy Orthopaedics, Inc.  Answer separately, in dollars and cents.

Past Loss of Consortium Damages: $ _500,000_

Future Loss of Consortium Damages: $ _–0–_ for _0_ years

## Question 17: Punitive Damages – DePuy Orthopaedics, Inc.

*Answer Question #17 only if you have answered "Yes" as to DePuy Orthopaedics, Inc. to Question #1, 2, 3, 4, 5, 7, 8, 9, 10, or 11.*

(a)   **Are the persons listed below entitled to punitive damages against DePuy Orthopaedics, Inc.?**

In addition to awarding damages to compensate the Plaintiffs for their injuries, you may, but you are not required to, award Plaintiffs punitive damages if you find that the acts of DePuy Orthopaedics, Inc. that caused the injury complained of were (i) wanton and reckless, or (ii) malicious. Punitive damages may be awarded for conduct that represents a high degree of immorality and shows such wanton dishonesty as to imply a criminal indifference to civil obligations. The purpose of punitive damages is not to compensate Plaintiffs but to punish DePuy Orthopaedics, Inc. for wanton and reckless or malicious acts and thereby to discourage DePuy Orthopaedics, Inc. and other companies from acting in a similar way in the future.

An act is wanton and reckless when it demonstrates conscious indifference and utter disregard of its effect upon the health, safety, and rights of others.

An act is malicious when it is done deliberately with knowledge of Plaintiff's rights, and with the intent to interfere with those rights.

In order to award punitive damages against DePuy Orthopaedics, Inc. for its malicious or wanton and reckless acts, Plaintiffs must prove one of the following:

(1) the malicious or wanton and reckless conduct was committed by one or more superior officers of DePuy Orthopaedics, Inc.; or

(2) one or more superior officers of DePuy Orthopaedics, Inc. authorized, participated in, consented to, or ratified the malicious or wanton and reckless conduct, or deliberately retained the unfit employee; or

(3) the malicious or wanton and reckless conduct was done in the pursuance of a recognized business practice of DePuy Orthopaedics.

A superior officer is a person possessing a high level of general managerial authority in relation to the nature and operation of DePuy Orthopaedics, Inc.'s business. However, it is not necessary that such person be an executive of DePuy Orthopaedics, Inc.

Plaintiffs must establish they are entitled to punitive damages by clear and convincing evidence.

Clear and convincing evidence means evidence that satisfies you that there is a high degree of probability that the acts of DePuy Orthopaedics, Inc. that caused the injury complained of were (i) wanton and reckless, or (ii) malicious. To decide for the plaintiff by clear and convincing evidence, it is not enough to find that the preponderance of the evidence is in the plaintiff's favor. A party who must prove his or her case by a preponderance of the evidence only need satisfy you that the evidence supporting his or her case more nearly represents what actually happened than the evidence that is opposed to it. But a party who must establish his or her case by clear and convincing evidence must satisfy you that the evidence makes it highly probable that what he or she claims is what actually happened.

Answer "Yes" or "No" with respect to each of the following:

Ramon Alicea          Yes

Uriel Barzel          Yes

Karen Kirschner       Yes

Hazel Miura           Yes

Eugene Stevens, Jr.   Yes

Michael A. Stevens    Yes

*Answer subpart (b) with respect to a particular Plaintiff only if you have answered "Yes" to subpart (a) as to that Plaintiff. Otherwise, do not answer subpart (b) for that Plaintiff.*

**(b) What amount of punitive damages, if any, do you award against DePuy Orthopaedics, Inc. to the persons listed below as to each listed cause of action?**

In arriving at your decision as to the amount of punitive damages, you should consider the nature and reprehensibility of what DePuy Orthopaedics, Inc. did. That would include the character of the wrongdoing, such as:

(1) whether DePuy Orthopaedics, Inc.'s conduct demonstrated an indifference to, or a reckless disregard of, the health, safety, or rights of others;

58

(2) whether the acts were done with an improper motive or vindictiveness;

(3) whether the act or acts constituted outrageous or oppressive intentional misconduct,

(4) how long the conduct went on,

(5) DePuy Orthopaedics, Inc.'s awareness of what harm the conduct caused or was likely to cause,

(6) any concealment or covering up of the wrongdoing,

(7) how often DePuy Orthopaedics, Inc. had committed similar acts of this type in the past; and

(8) the actual and potential harm created by DePuy Orthopaedics, Inc.'s conduct, including the harm to individuals other than Plaintiffs.

However, although you may consider the harm to individuals other than Plaintiffs in determining the extent to which DePuy Orthopaedics, Inc.'s conduct was reprehensible, you may not add a specific amount to your punitive damages award to punish DePuy Orthopaedics, Inc. for the harm it caused to others.

The amount of punitive damages that you award must be both reasonable and proportionate to the actual and potential harm suffered by each Plaintiff, and to the compensatory damages you awarded that Plaintiff. The reprehensibility of DePuy Orthopaedics, Inc.'s conduct is an important factor in deciding the amount of punitive damages that would be reasonable and proportionate in view of the harm suffered by Plaintiff and the compensatory damages you have awarded Plaintiff.

You may also consider DePuy Orthopaedics, Inc.'s financial condition and the impact your punitive damages award will have on DePuy Orthopaedics, Inc.

**What sum of money, if any, should be assessed against DePuy Orthopaedics, Inc. and awarded to plaintiff(s) as punitive damages?  Answer in dollars and cents, if any:**

Ramon Alicea        $ 13,000,000

Uriel Barzel        $ 13,000,000

Karen Kirschner     $ 13,000,000

Hazel Miura        $ _13,000,000_

Eugene Stevens     $ _13,000,000_

Michael Stevens    $ _13,000,000_

## Question 18: Punitive Damages – Johnson & Johnson

*Answer Question #18 only if you have answered "Yes" as to Johnson & Johnson to Question #1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, or 14. Otherwise do not answer Question #18.*

(a)   Are the persons listed below entitled to punitive damages against Johnson & Johnson?

In addition to awarding damages to compensate the Plaintiffs for their injuries, you may, but you are not required to, award Plaintiffs punitive damages if you find that the acts of Johnson & Johnson that caused the injury complained of were (i) wanton and reckless, or (ii) malicious. Punitive damages may be awarded for conduct that represents a high degree of immorality and shows such wanton dishonesty as to imply a criminal indifference to civil obligations. The purpose of punitive damages is not to compensate Plaintiffs but to punish Johnson & Johnson for wanton and reckless or malicious acts and thereby to discourage Johnson & Johnson and other companies from acting in a similar way in the future.

An act is wanton and reckless when it demonstrates conscious indifference and utter disregard of its effect upon the health, safety, and rights of others.

An act is malicious when it is done deliberately with knowledge of the plaintiff's rights, and with the intent to interfere with those rights.

In order to award punitive damages against Johnson & Johnson for its malicious or wanton and reckless acts, Plaintiffs must prove one of the following:

(1) the malicious or wanton and reckless conduct was committed by one or more superior officers of Johnson & Johnson; or

(2) one or more superior officers of Johnson & Johnson authorized, participated in, consented to, or ratified the malicious or wanton and reckless conduct, or deliberately retained the unfit employee; or

(3) the malicious or wanton and reckless conduct was done in the pursuance of a recognized business practice of Johnson & Johnson.

A superior officer is a person possessing a high level of general managerial authority in relation to the nature and operation of Johnson & Johnson's business. However, it is not necessary that such person be an executive of Johnson & Johnson.

61

Plaintiffs must establish they are entitled to punitive damages by clear and convincing evidence.

Clear and convincing evidence means evidence that satisfies you that there is a high degree of probability that the acts of Johnson & Johnson that caused the injury complained of were (i) wanton and reckless, or (ii) malicious. To decide for the plaintiff by clear and convincing evidence, it is not enough to find that the preponderance of the evidence is in the plaintiff's favor. A party who must prove his or her case by a preponderance of the evidence only need satisfy you that the evidence supporting his or her case more nearly represents what actually happened than the evidence that is opposed to it. But a party who must establish his or her case by clear and convincing evidence must satisfy you that the evidence makes it highly probable that what he or she claims is what actually happened.

Answer "Yes" or "No" with respect to each of the following:

Ramon Alicea ___Yes___

Uriel Barzel ___Yes___

Karen Kirschner ___Yes___

Hazel Miura ___Yes___

Eugene Stevens, Jr. ___Yes___

Michael A. Stevens ___Yes___

*Answer subpart (b) with respect to a particular Plaintiff only if you have answered "Yes" to subpart (a) as to that Plaintiff. Otherwise, do not answer subpart (b) for that Plaintiff.*

**(b) What amount of punitive damages, if any, do you award against Johnson & Johnson to the persons listed below as to each listed cause of action?**

In arriving at your decision as to the amount of punitive damages you should consider the nature and reprehensibility of what Johnson & Johnson did. That would include the character of the wrongdoing, such as:

(1) whether Johnson & Johnson's conduct demonstrated an indifference to, or a reckless disregard of, the health, safety, or rights of others;

(2) whether the acts were done with an improper motive or vindictiveness;

(3) whether the act or acts constituted outrageous or oppressive intentional misconduct,

(4) how long the conduct went on,

(5) Johnson & Johnson's awareness of what harm the conduct caused or was likely to cause,

(6) any concealment or covering up of the wrongdoing,

(7) how often Johnson & Johnson had committed similar acts of this type in the past; and

(8) the actual and potential harm created by Johnson & Johnson's conduct, including the harm to individuals other than Plaintiffs.

However, although you may consider the harm to individuals other than Plaintiffs in determining the extent to which Johnson & Johnson's conduct was reprehensible, you may not add a specific amount to your punitive damages award to punish Johnson & Johnson for the harm it caused to others.

The amount of punitive damages that you award must be both reasonable and proportionate to the actual and potential harm suffered by each Plaintiff, and to the compensatory damages you awarded that Plaintiff. The reprehensibility of Johnson & Johnson's conduct is an important factor in deciding the amount of punitive damages that would be reasonable and proportionate in view of the harm suffered by Plaintiff and the compensatory damages you have awarded Plaintiff.

You may also consider Johnson & Johnson's financial condition and the impact your punitive damages award will have on Johnson & Johnson.

**What sum of money, if any, should be assessed against Johnson & Johnson and awarded to plaintiff(s) as punitive damages? Answer in dollars and cents, if any:**

Ramon Alicea    $ _15,000,000_

Uriel Barzel    $ _15,000,000_

Karen Kirschner    $ _15,000,000_

Hazel Miura          $ 15,000,000

Eugene Stevens       $ 15,000,000

Michael Stevens      $ 15,000,000

## POST ARGUMENT INSTRUCTIONS

You are the sole and exclusive judges of fact. You should determine these facts without any bias, prejudice, sympathy, fear or favor, and this determination should be made from a fair consideration of all the evidence that you have seen and heard in this trial. Do not speculate on matters that are not in evidence. Keep constantly in mind that it would be a violation of your own sworn duty to base a verdict on anything but the evidence in the case. Your answers and verdict must be unanimous; that is, all of you must agree to each of your answers. You will carefully and impartially consider all the evidence in the case, follow the law as stated by the Court, and reach a just verdict, regardless of the consequences.

The fact that I have given you instructions about a particular claim or defense, or that I have not so instructed you, should not be interpreted by you in any way as an indication that I believe a particular party should win or prevail in this case. Also, you should not interpret the fact that I have given instructions about the plaintiffs' damages as an indication in any way that I believe that plaintiffs should, or should not, win this case.

Remember any notes you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be

unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to reexamine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently or merely to finish the case.

Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case. You will now retire to the jury room. In a few minutes I will send you this charge and the exhibits the Court has admitted into evidence. Upon receiving the exhibits and charge, you should select a foreperson and commence deliberations. Do not deliberate unless all of you are present in the jury room. In other words, if one or more of you go to lunch together or are together outside the jury room, do not discuss the case.

If during the course of your deliberations you wish to communicate with the Court, you should do so only in writing by a note signed by the foreperson. I will then respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally. I caution you, however, with respect to any message or question you might send that you should never state or specify your numerical division at the time.

During your deliberations you will set your own schedule, deciding for yourselves when and how frequently you wish to recess and for how long.

After you have reached your verdict, you will return this charge together with your written answers to the foregoing questions. Do not reveal your answers to anyone besides other members of the jury until such time as you are discharged, unless otherwise directed by me. After you have reached a verdict, you are not required to talk with anyone about the case.

Your foreperson will sign in the space provided on the following page after you have reached your verdict.

Signed November 14th, 2017.

ED KINKEADE
UNITED STATES DISTRICT JUDGE

## VERDICT OF THE JURY

We, the jury, have answered the above and foregoing questions as indicated, and

herewith return the same into Court as our verdict.

Signed *November 16* , 2017.

_____
(FOREPERSON